22-2599 May it please the court. I'm Matt Gaziah, appearing on behalf of the appellants. At issue is a standing dismissal. It's a 12-B-1 dismissal for lack of injury in fact. The issue in this case, however, is dispositively found at Appendix 61, wherein the judge finds all of these various lost ticket sales, increased employment expenses, increased employees, increased employment turnover. Let me assume that you have standing and that the district court confused lack of irreparable harm at the preliminary injunction with lack of standing at a permanent one, so you have it. But how do you have anything possible of a merit when Jacobson is still the law of the land? And I know there are a lot of people who are saying, oh, Jacobson, this and that, but we're told we have to follow the Supreme Court unless the Supreme Court tells us otherwise, and they haven't done it. So why isn't that the answer to the whole thing and some language and some opinions of our court? Simply, roll, get in the way, but not our money. Jacobson settles it, you lose. You have standing, goodbye. Jacobson stands for the general proposition that governments can require vaccinations. This is different from that. At issue is not whether the government can require vaccinations, but whether government can selectively require vaccinations for theaters, but not for community centers, schools, and churches and congregations. Clementine Company is the perfect example. 11 a.m., church is in session, congregants are spreading around COVID, they're unmasked, they're unvaccinated, no problems. Two hours later, now it's time for a comedy show, suddenly this is an issue. That's not Jacobson. That's a content-based discrimination. It's a viewpoint discrimination issue. This is a delineation. Now, how does it discriminate on viewpoint? But even if it did, why isn't a statement that the judgment about vaccination and who should be is okay? But go on. I'm not sure I understand the court's question. The delineation here is between schools, community centers, churches on the one hand. No vaccinations required. Comedy centers, theatrical venues, comedy centers, etc. And restaurants and other things where you have extended period of talking of unassociated people. What's the viewpoint that's being discriminated against? Religious versus non-religious, pupil versus professional. It's not religious versus non-religious. It doesn't apply to lots of non-religious activity. It surely could apply to religious speech. If there's a theater company doing a religious performance, does it apply? I don't believe so because it's a congregation. A theatrical performance in a theater company that has religious content to it. Literally Clementine. 11 a.m. Clementine company rented out to a church, a congregation. That was exactly the same thing. You have people up there singing and dancing. They're in there for the same elongated period of time. It may be that in one instance it's the same. But the distinction is one that separates things which are generally different. Because generally what you have done is different from what generally happens. When you have a religion, isn't that enough to say that that is a rational decision by the government? Well, there's two issues baked into the question. The first question is what is the level of scrutiny? It's strict scrutiny. Once you're delineating between religion and non-religion as pertains to congregations versus comedy centers, for example, that is in itself, this is Everson versus Arkansas, you cannot make that delineation. The Establishment Clause says exactly this. No laws respecting the establishment of religion. Once you're making a law that excludes religion per se, that is an issue. Where does the law do that? The policy explicitly exempts congregations. Among other things. Among other things. However, this is the delineation at issue under the Establishment Clause problem, under the Free Speech Clause problem, and also Equal Protection Clause problem. You brought a distinct Establishment Clause claim? There was no distinct Establishment Clause claim. There was a First Amendment claim. They said free speech, and they couch it in terms of viewpoint discrimination, but it's the same thing. They're complaining about church. There's not a free speech issue with church versus non-church. That's the Establishment Clause issue. The Free Speech Clause issue comes in with community centers and schools versus comedy clubs. How is the free speech abridged here? The free speech is abridged here because it's a viewpoint discrimination problem. Once the government is delineating among who gets to make performances, and more importantly here, who gets to listen to these performances. Don't we have cases which say what you say in a place is different from whatever you are allowed to go to a place? The court may have said that. However, in Virginia State Board of Pharmacy versus Virginia Citizens, a SCOTUS case, 425 U.S. 748, the Free Speech Clause protects the communication as to its source and as to its recipients both. And this comes up because the district court says, well, okay, fine. There's a free speech problem, but the free speech problem isn't for you, the comedy club. It's for your audience because it's essentially... Is there an allegation that the city restricted, stopped the theater from speaking? Yes. Yes. That's the entire complaint. The entire complaint, where is that? In terms of a distinct paragraph, I can't recite that offhand, Your Honor. I'll file a letter later on today. Isn't that your whole theory? The whole theory is this. The regulations facially delineate between some speakers, schools, community centers, et cetera, and other speakers, comedy centers. Comedy centers had to engage in this increased monetary costs to comply with these regulations, and they did so against their free will, number one, and number two, under threat of monetary fines. Hundreds of thousands of dollars is what the record said. $1,000 for first instance, $2,000 for the second, $3,000 for subsequent. Why is it even, before we get to viewpoint discrimination, why is it even a speech regulation under RCARA? It's a speech regulation because theatrical performances are pure speech. And bookstores sell books, which are pure speech, so it's just like RCARA. RCARA is different. And it's not regulating speech there. It was regulating sexual activity, and here it's regulating a requirement of checking for proof of vaccine before entering the establishment. The issue isn't the requirement of checking. The issue is precluding the people who do not pass the check. It's restricting the audience. Yeah, let me, because of RCARA, I must say, I can understand you're making a claim under equal protection, and then the question is, are they the same? And I think they're not the same, but that's okay. That's your argument. But the speech thing, I think RCARA takes care of. I mean, essentially, you're trying to bring the equal protection into the free speech. Okay, but if you win on one, that's enough. If you don't, you're not there on either. To be fair, the equal protection does have a different set of scrutinies. You have rational basis intermediates. Yeah, that's why you'd rather not. Pardon? That's why you'd rather not have equal protection, but rather have speech. Okay. Yeah. I do want to address RCARA. It is absolutely critical. This is the distinction. That pertained to sexual activity, which is not speech. The free speech clause does not attach to sexual activity. Brothels are not free speech protected. Theatrical venues are. Theatrical performances are. That's the difference. We'll hear from the city, and then you reserve some time for rebuttal. Thank you. Thank you. Good morning, Your Honors. Lena Joker on behalf of the city mayor. This court should affirm, first of all, because the pleadings here fail to state the standing for the very small sliver of a claim that still exists after this case has gone fully moot. And second, because, as Your Honors noted, there's really, it's utterly meritless on every claim. There's no cognizance of it. Understanding the complaint alleges direct economic injury via lost refunds of entrance fees and the hiring of security guards or other personnel to check the records. Why, for the pleading purposes, not, now we're not in the, what you need a preliminary injunction stage to show harm and the like, but for pleading purposes, why isn't that sufficient for standing? Because the actual complaint doesn't undertake to prove what they've said in their brief. You don't have to prove things in a complaint. That's the difference. It doesn't undertake to even articulate. Financial loss is the term they say, but it doesn't articulate any baseline. What it says is that they decided to impose their own mandatory voluntary masking and that they had to hire additional staff, that's in their complaint, in order to enforce their voluntary decision to enforce masking. And then they say that they chose to issue refunds, but KEDA NYC did not require them to issue refunds to customers who they couldn't see. That was a choice that they made on their own. They never articulate how this policy caused them financial harm. They say really that it caused them a stigma, it caused their customers who had just been previous to KEDA NYC, under strict stay-at-home orders, this was part of a larger policy for reopening the city. They never say that this policy is attributable to the harms, to actual financial losses. They're alluding to costs. I have to pay people to check and I have to refund. Again, for pleading purposes. I don't know that they need to engage in an economic analysis of how many more people would come out in light of the policy in contrast with quarantine. Do you have any authority in support of that for purposes of the pleading state? I would say that their complaint, and this is really a pleading problem, not a problem that nobody could state standing on this, but in their own complaint, they say that they hired additional staff to enforce their own voluntary masking requirement, and then they say- At the very least, the court could not have decided on standing and then decide with prejudice as it did. If it was a standing issue, it would have had to have been without prejudice coming back and changing the pleading. In terms of what the district court did, going down this line just seems to be useless. If we decided for you on that, we decided it had to be without prejudice. They come back and make the pleading which you're now saying that they're doing. Why bother with this? Absolutely. That's why I would say that the primary thrust of our brief and our argument is that there's no cognizable claim here, not under the First Amendment, not under equal protection. Even if they had adequately pled standing here based on the actual pleadings in their complaint as opposed to what they've supplemented in various statements in their case, there's no merit. I'd say also that their first response to that has always been in the brief to say, well, you could remand, but I just want to point out that this was an issue that was fully litigated. In the preliminary injunction state, there was extensive briefing on the merits. The district court addressed it. We've addressed it. We addressed it in the briefing on this. And it was addressed below because this was not just a 12B1. It was a 12B1 and 12B6 motion. So it's properly before the court as a preliminary matter. There's no merit to the First Amendment claim. As the court noted under ACARA, this is not a regulation. The expressive conduct of allowing people into your venue, whether or not they are vaccinated or unvaccinated, that's never been their claim. They're not saying that they're expressing a viewpoint about vaccination or about COVID by letting people in. They're saying that what happens inside the venue is protected. And because what happens inside the venue is protected, they should be exempt from a neutral regulation. I mean, if a fire department says maximum number of people allowed in is 100 people, the 101st person doesn't get to hear the production. But it's obviously a neutral regulation of conduct and not a speech regulation under ACARA, right? That's exactly what ACARA holds, yes. There are a whole host of things that the government does. So the argument has to be RVs. It has to be an equal protection argument. An investor that was trying to get the other person. That's what I've heard. And I think that that claim likewise has no merit. And that claim has no merit. But before you get to the merits, so on the equal protection argument, there's at least allegations of nominal damages, of some form of damage. For the equal protection claim, there's stigma. All of those don't go. So that's the merits. That's all the merits. So their theory, I think, on equal protection is that the pure constitutional injury of being treated differently than houses of worship is enough. And it's not. Even if it were, there's no – the equal protection claim can't do an end run around sort of what the First Amendment – their alternate First Amendment theory, which is actually that this is a viewpoint discrimination. I mean, that's the whole way that this is framed for them, is that they're being discriminated in. If a theater said – if a law said you will allow blacks into the theater but not whites or whites but not blacks, you wouldn't have your First Amendment for all the other reasons, but you'd have a direct equal protection claim. So the question has to be, is the distinction between whom they are allowing in, in one way or another, one that raises equal protection issues? And it doesn't because there's not an equal – I think under Jacobson, really, that's where Jacobson really comes into play. There's no equal protection right to not be – to remain unvaccinated and yet attend indoor dining fitness facilities, restaurants, comedy clubs. I mean, the list goes on and on. This is not just theaters, just to be clear. I know that goes more to the First Amendment point. But the idea that the treatment is differential based on the people who are being let in, that claim has no merit because there's a – the government is allowed, in the point of a pandemic, to say – to impose a vaccination requirement and to sort of enforce that requirement in part by restricting access to places. So that equal protection – and I'm not even sure that they could raise that claim because that claim really belongs to the patrons. And they have various reasons why they might be able to raise that claim. But put all of that aside, their real theory, though, is that they are being treated differently than houses of worship, not that it's based on vaccination status, but that somehow houses of worship differ. And I'll note that they suggested that if there was a religious performance that was going on, that this wouldn't – that's not true at all. The law said that any recreation – indoor recreation, dining, fitness facility, which includes concert theaters – concerts, movie theaters, arts, performances. It also included commercial event spaces, convention centers, recreational gaming centers. So any place where people congregate indoors. It also includes restaurants, places where people take off their masks. The fact that it did not then include houses of worship was not a reflection of – I mean, this is back to a viewpoint discrimination theory. What it reflects is a rational determination that these places are not comparable, either on a risk portfolio, as we explained in our brief, because of the nature of the – and also under the Constitution, which the Supreme Court very, very clearly during the pandemic instructed state and local governments that as the reopening happens, the priority has to be to reopen houses of worship at the same time as essential businesses. That's what the court said in the Cuomo case, in Newsom, in South Bay Pentecostal. So there really wasn't a constitutional valiance to the idea that you would treat houses of worship – you would exclude them from a neutral general health policy about capacity limits or one about vaccination requirements or one about masking. And I just – I see my time is nearly up. I just want to, as a final note, the court has broadly deferred and should defer to health experts who made these determinations without the benefit of hindsight based on what they knew at the time and as part of one piece of a much larger policy. So this policy is a piece with vaccination requirements for employment, with the closures of schools, with the phased reopening. You know, the last time I heard this argument was November – before November 2020 in connection with a lawsuit brought by the Roman Catholic Archdiocese of Brooklyn. That's right. And it was all about deference, and we were promptly reversed. And what that case said to regulators was that houses of worship are not meant to be closed to the same extent as less – as all business. They should not be targeted. They should be allowed to reopen. As in Target. That was the box stores. As in Target, yes. With retail, they'd reopen. But that does not create an equal protection violation for theaters or for any of the places that did close. Yeah, I mean, you don't need deference if it's rational basis review, right, if it's not burdening a fundamental right or – and that would follow from a conclusion that it doesn't violate the First Amendment and it's not discriminating on the basis of religion versus non-religion. No, I would say that it's abundantly rational when it's supported by the public health experts' opinions. This is why the argument is focused on the First Amendment. And that is why the pleading attempts to get around the fact that it's just an abundantly rational policy and one that was meant to protect public health. Thank you. Thank you. We'll do some rebuttal. May it please the court. To answer the earlier question, paragraph 5 of the complaint asserts that the policy is discriminatory against plaintiffs by singling out comedy clubs and theaters to the exclusion of community centers and schools. Paragraph 45 says the same thing. I want to focus on this argument of no refunds were required by the policy. It may not be the policy that requires refunds, but it's a failure of consideration. They would have a breach of contract claim raised against them if they did not have the refund. This business of there's no expression taking place in the theater. I understood counsel to be saying that the refund was based on. Discretionary masking policy as opposed to turning someone away. Didn't have the vaccination requirements. Are your allegations different than that? I believe the allegation is different from that. I understand that there was some statements in the in the briefing to the extent that Temple had a voluntary masking requirement, but the same part of the order, and I would have to write a letter this afternoon to get the exact appendix citation. But the same part of the order recognizes that Clementine Company did not have that. Clementine Company didn't go into any of this business of we were, you know, you have an allegation in the complaint that you were giving refunds for people who didn't either want to get vaccinated or didn't comply with the vaccination policy. That's my understanding. People were spitting on employees. They were losing employees because of that. And, you know, to kind of smooth things over there, they're issuing refunds to, you know, not have their employees assaulted. The the the First Amendment does not require that these theaters talk about The theatrical venue is entitled by operation of the free speech clause to an audience, and the government may not put up barriers to aspects of the audience. Taking your honor's earlier point, just like the government cannot say no, no whites may attend or no blacks may attend or what have you. Once the government starts delineating what that's that's that is. Yes, your honor. That is equal protection. The free speech part comes in with schools and community centers, and they want to shoehorn us into the religion aspect of things. But we can't forget that if the same performance without restrictions could happen around the block at the local community center, no restrictions, there is no rational basis for that. But there is a rational basis in what is more important than how much harm is done and any number of things. If it is a rational basis, you know, almost anything is OK. What is more important is the free speech problem. Government may not delineate what is more or less important in terms of ideas or speakers. That is the whole point of the First Amendment. It is to get the government out of the marketplace of ideas. No governmental distortions in the government, in the business of ideas. And I want to address this earlier point, your honor, as to the archdiocese case. That isn't limited to free exercise. The free exercise issue entailed in that case is equally applicable to other performances. You cannot, as government, say we're going to exclude parts of an audience. Only this part may hear the speaker's message. That part may not. That in and of itself is a free speech violation. Isn't that what a fire department regulation regulating maximum occupancy does? It is not. A fire department regulating maximum occupancy, well, actually, that's slightly different. In that particular case, if they said people over, no people more than 50 people in a building, all right, that's too much COVID risk, our scientists say so. That would be different. But irrespective of venue occupancy, irrespective of the population inside the building, that was the distinction. It's solely based on the content of the speech being purveyed. Schools, community centers versus comedy and theater. They're essentially saying that comedy and theater is less important. And you can't do that. First amendment. We've got your argument well in line. Thank you very much. Thank you, your honors.